[Cite as *State v. Weddle*, 2026-Ohio-2766.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2025-L-085 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| ROBERT F. WEDDLE, | Trial Court No. 2024 CR 000879 |
| Defendant-Appellant. | |

## OPINION AND JUDGMENT ENTRY

Decided: July 20, 2026
Judgment: Affirmed

*Charles E. Coulson*, Lake County Prosecutor, and *Jennifer A. McGee*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Eric M. Levy*, The Law Office of Schlachet and Levy, Terminal Tower, Suite 2200, 50 Public Square, Cleveland, OH 44113 (For Defendant-Appellant).

ROBERT J. PATTON, J.

{¶1}  Defendant-appellant, Robert F. Weddle ("Weddle"), appeals from the judgment of the Lake County Court of Common Pleas sentencing him to an indefinite prison term of five to seven-and-a-half years in prison following his plea of guilty to one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(1).

{¶2}  On appeal, Weddle alleges that his sentence, imposed as mandatory time, is contrary to law because the prior offense was based on a Michigan statute, and the court did not make oral findings that the Michigan conviction was "substantially

equivalent" to trigger R.C. 2929.13(F)(6). Weddle, acknowledging that he failed to object, argues alternatively that his counsel was ineffective. Second, Weddle challenges the trial court's imposition of restitution in the amount of $290. Finally, Weddle asserts that the trial court failed to pay attention to his witness or consider his testimony at sentencing because the judge inquired regarding a poster of David Bowie visible in the witness's camera.

{¶3} Upon review, we conclude that our review is confined to plain error as Weddle failed to lodge any objections at the trial court level with respect to these issues. Each of these contentions are made for the first time on appeal. Further, we conclude that Weddle's sentence was proper pursuant to R.C. 2929.13(F)(6). We find no plain error in the trial court's order of restitution, and the record indicates that the trial judge was attentive during the mitigation witness's testimony.

{¶4} Accordingly, the judgment of the Lake County Court of Common Pleas is affirmed.

## Substantive and Procedural Facts

{¶5} In December 2024, a Lake County Grand Jury indicted Weddle on four counts: one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11(A)(1) ("Count 1"); one count of domestic violence, a misdemeanor of the first degree, in violation of R.C. 2919.25(A) ("Count 2"); one count of unauthorized use of vehicle, a misdemeanor of the first degree, in violation of R.C. 2913.03(A) ("Count 3"); and one count of unlawful restraint, a misdemeanor of the third degree, in violation of R.C. 2905.03 ("Count 4"). Weddle originally pleaded not guilty to the charges.

{¶6}    A pretrial hearing was held on February 6, 2025, where the parties placed a potential plea resolution on the record. The State offered to dismiss Counts 2, 3, and 4 of the indictment in exchange for Weddle's guilty plea on Count 1. No agreed sentencing recommendation was made. However, the parties noted on the record that as Weddle has a prior second-degree felony conviction in the State of Michigan, sentencing would include a mandatory prison term.

{¶7}    On March 6, 2025, Weddle accepted the offer and changed his plea to guilty on Count 1. Prior to accepting his guilty plea, the trial court reminded Weddle that a guilty plea would result in a mandatory prison sentence. Weddle indicated he understood. The trial court ordered a presentence investigation and requested a victim impact statement from the victim, B.S.

{¶8}    On April 10, 2025, the trial court conducted a sentencing hearing. Weddle presented mitigation testimony via a representative from the Toxic Abusive Relationships Anonymous program. After making the required considerations, referred to by Weddle as "buzzwords," the trial court sentenced Weddle to a prison term of five to seven-and-a-half years, noting that because it was a mandatory term, he would be ineligible for judicial release. The trial court also ordered restitution to the victim in the amount of $290.

{¶9}    Weddle, acting pro se, requested leave to file a delayed appeal pursuant to App.R. 5(A). This court granted leave, but Weddle failed to file an appellate brief. This court, sua sponte, issued an order requiring Weddle to file a brief or show cause why the appeal should not be dismissed. In response, Weddle requested appointed counsel, which this court granted.

Case No. 2025-L-085

**The Appeal**

{¶10} Weddle raises the following three assignments of error for review:

[1.] The trial court erred in imposing a mandatory prison sentence without sufficient evidence or findings on the record that [Weddle's] prior out-of-state conviction was a qualifying "substantially equivalent" offense.

[2.] The trial court committed plain error by ordering restitution without establishing a competent and credible evidentiary basis for the specific amount on the record.

[3.] The trial court's conduct during the sentencing hearing deprived [Weddle] of a full and fair opportunity to present mitigation evidence, violating his right to due process as well as the Eighth Amendment to the United States Constitution.

**Plain Error**

{¶11} As a preliminary matter, we note that Weddle failed to object to any of these alleged errors in the trial court, and each argument is made for the first time on appeal. As such, Weddle has forfeited all but plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). However, "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶12} The Supreme Court of Ohio set forth limitations on what constitutes plain error. "First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain, i.e., the error must be an 'obvious' defect in the proceedings. Third, the error must have affected 'substantial rights.' This means that the trial court's error must have affected the outcome of the trial or prejudiced the defendant." *State v. Dundics*, 2016-Ohio-1368, ¶ 19 (11th Dist.), citing *State v. Barnes*, 2002-Ohio-68, ¶ 20.

## Mandatory Prison Sentence

{¶13}  In his first assignment of error, Weddle argues that the trial court erred by imposing a mandatory sentence under R.C. 2929.13(F)(6) because it did not place findings on the record that Michigan's home invasion statute is "substantially equivalent" to that of Ohio's burglary statute. Specifically, Weddle argues that had the court placed its analysis on the oral record, it would have discovered that Michigan's statute contains some differing elements than that of Ohio's. We disagree.

{¶14}  "[A] trial court is required to sentence a defendant to a mandatory prison term for Felonious Assault if R.C. 2929.13(F)(6) applies." *State v. Flitcraft*, 2024-Ohio-3146, ¶ 52 (11th Dist.); *accord State v. Paskins*, 2022-Ohio-4024 (5th Dist.); *State v. Spaulding*, 2017-Ohio-7993 (6th Dist.). "R.C. 2929.13(F)(6) provides for the imposition of a mandatory prison term upon a conviction for a first or second degree felony that is not otherwise set forth in R.C. 2929.13(F) if the offender previously was convicted of or pleaded guilty to any first or second degree felony." *State v. Watson*, 2025-Ohio-515, ¶ 15 (11th Dist.), citing *State v. Kinney*, 2018-Ohio-404, ¶ 23 (1st Dist.). Any first or second degree felony includes "an offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to one of those offenses." R.C. 2929.13(F)(6).

{¶15}  Weddle argues that because the Michigan home invasion statute contains two elements that differ from Ohio's burglary statute, the statutes are not substantially equivalent and do not trigger R.C. 2929.13(F)(6). Weddle notes that Michigan's home invasion statute requires entry "without permission," whereas Ohio's burglary statute requires entry by "force, stealth, or deception." Mich.Comp.Laws Ann., Ch. 750.110a(3);

R.C. 2911.12(A). Additionally, Michigan's statute requires "intent" to commit a felony, larceny, or assault, whereas Ohio requires the "purpose" to commit a criminal offense. *Id*.

{¶16}  The Ohio Supreme Court has defined "substantially equivalent" as "being largely but not wholly that which is specified," with "substantially" being the operative word. *State v. Lloyd*, 2012-Ohio-2015, ¶ 28; *Swan Creek Twp. v. Wylie & Sons Landscaping,* 2006-Ohio-584, ¶ 28 (6th Dist.), quoting *Merriam Webster's Collegiate Dictionary* 1174 (10th Ed.1996). Thus, "[b]y the phrase's plain and ordinary meaning, 'substantial equivalence' does not contemplate identical or even strict equivalence and presumes potential differences." *Miller v. Cordray*, 2009-Ohio-3617, ¶ 15 (10th Dist.). Therefore, "substantially equivalent" permits non-material statutory differences.

{¶17}  Michigan courts have rejected Weddle's argument concluding "the element of breaking and entering or entering without permission clearly corresponds to the Ohio element requiring trespass by force, stealth, or deception . . . we conclude that Ohio Rev Code Ann 2911.12(A)(2) corresponds to second-degree home invasion, MCL 750.110a(3)." *People v. Crews*, 299 Mich.App. 381, 393-396 (2013). We agree with this holding and find the distinctions between the statutes insignificant. Indeed, the statutes are substantially equivalent. Neither elemental difference meaningfully changes the gravamen of the conduct the statutes are designed to criminalize. R.C. 2929.13(F)(6) presumes that states will have elemental differences between statutes and does not require "strict equivalence." *Cordray* at ¶ 15. Accordingly, this component of Weddle's first assignment of error is not well taken.

{¶18}  Weddle next argues, in the alternative, that his trial counsel was ineffective for failing to challenge the imposition of a mandatory prison term. We disagree.

Case No. 2025-L-085

{¶19} "To obtain a reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." *State v. Madrigal*, 2000-Ohio-448, ¶ 49, citing *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984). However, in a case where the defendant pleaded guilty, the defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty." *State v. Xie*, 62 Ohio St.3d 521, 524 (1992), quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

{¶20} Counsel's performance was not deficient. The Sixth District addressed a similar argument in *State v. Bursley*, 2021-Ohio-1613 (6th Dist.). There, the court acknowledged that trial counsel failed to raise the issue of whether a prison term should be mandatory but observed that counsel negotiated a highly favorable plea agreement where several counts would be dismissed. *Id*. at ¶ 23. Like in *Bursley*, Weddle's counsel negotiated a favorable plea deal where Weddle pled guilty to Count 1 in exchange for the State's dismissal of Counts 2, 3, and 4. This does not fall "below an objective standard of reasonableness." *Madrigal* at ¶ 49, citing *Strickland* at 687-888.

{¶21} Assuming arguendo counsel's performance could be construed as deficient, Weddle certainly cannot show that he would not have otherwise pleaded guilty as the trial court informed Weddle of the consequences at least twice prior to accepting his guilty plea—once at the final pretrial hearing, and again immediately before accepting his plea. Additionally, a warning that the prison term was mandatory was contained in the

Case No. 2025-L-085

plea form signed by Weddle. Prior to accepting his guilty plea, the following exchange occurred during the plea colloquy:

> THE COURT: There is a mandatory prison term that must be imposed upon you by law, so you cannot be sentenced to community control. Mandatory prison also means there can be no judicial release during the time of your mandatory incarceration. Do you understand that?
>
> MR. WEDDLE: Yes.

{¶22} Thus, Weddle was informed by the trial court that any prison term imposed would be mandatory prior to pleading guilty. We therefore find it "unconvincing for [Weddle] to maintain that if he had only been warned about the full potential . . . consequences of his plea, [he] would not have pled guilty, when he was in fact duly informed of such consequences by the trial court itself." *State v. Adames*, 2017-Ohio-4058, ¶ 29 (5th Dist.).

{¶23} Accordingly, Weddle's first assignment of error is without merit.

## Restitution

{¶24} In his second assignment of error, Weddle complains that there "was no evidentiary hearing and no evidence taken on the record regarding an award of restitution" rendering this portion of his sentence contrary to law. We disagree.

{¶25} Where a trial court grants restitution "the amount of the restitution must be supported by competent, credible evidence in the record from which the court can discern the amount of the restitution to a reasonable degree of certainty." *State v. Laudermilk*, 2022-Ohio-659, ¶ 51 (11th Dist.), citing *State v. Johnson*, 2004-Ohio-2236, ¶ 10 (4th Dist.).

{¶26} We first note that the only reason no evidentiary hearing occurred on the issue of restitution was because Weddle failed to request one. R.C. 2929.18(A)(1)

Case No. 2025-L-085

provides a mechanism for which a party may challenge the amount of restitution. Specifically, the statute provides:

> Restitution by the offender to the victim of the offender's criminal offense or the victim's estate, in an amount based on the victim's economic loss. In open court, the court shall order that full restitution be made to the victim, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. At sentencing, the court shall determine the amount of restitution to be made by the offender . . . The court shall hold a hearing on restitution if the offender, victim, victim's representative, or victim's estate disputes the amount.

R.C. 2929.18(A)(1).

{¶27} As Weddle failed to exercise his statutory right to challenge the restitution amount, the trial court was not required to hold an evidentiary hearing. Accordingly, the trial court's failure to hold an evidentiary hearing was not erroneous.

{¶28} Second, contrary to Weddle's claim, the trial court's order was not "based on an arbitrary figure devoid of evidentiary support." The victim impact statement, which the trial court read and considered in sentencing, shows that B.S. sustained $290 in medical bills not reimbursed by her insurance. Notably, this was not a mere guess, estimate, or an unsubstantiated self-reported number. B.S. submitted her medical billing statements as accompanying evidence which reflected that her insurance paid a substantial portion of the costs. The $290 award reflects B.S.'s out-of-pocket costs. Accordingly, we find the award supported by competent, credible evidence.

{¶29} Weddle argues in the alternative that his counsel was ineffective for failing to challenge the restitution order. We do not find counsel's performance deficient. As explained above, the $290 was calculated based on the victim impact statement and

contained verifying documents. "Issuing an objection lacking in merit would not have produced a different outcome." *State v. Wright*, 2018-Ohio-2599, ¶ 27 (6th Dist.).

{¶30} Accordingly, Weddle's second assignment of error is without merit.

## David Bowie

{¶31} In his third assignment of error, Weddle asserts that the judge failed to pay attention to his mitigation witness as the judge briefly commented on a poster of David Bowie visible in the background of the witness's camera. Weddle also points to a brief technological error in support of this assignment. In other words, Weddle asks this court to infer both that the trial judge was inattentive from a one-off comment regarding the visible wall decor, and that the trial court prevented Weddle from presenting mitigation evidence because the witness's audio temporarily cut out.

{¶32} The record completely belies both propositions. While there was a brief technical difficulty at the sentencing hearing where the mitigation witness was rendered inaudible, Weddle was not deprived of an opportunity to present the evidence, nor did David Bowie consume the judge's attention in any way.

{¶33} Prior to going inaudible, the witness was saying:

> THE WITNESS: . . . And all of a sudden [Weddle] started really connecting to himself, taking ownership, and being accountable, and then that energy with people attracted to him, went to him and asked if he could help, help them as a sponsor, work through the steps with them.
>
> Since then, [Weddle] has developed a role within our foundation, which is an international group. We're based here in Florida. We're all over the world, though.
>
> THE COURT: Whoop, you froze up.

{¶34} When the witness became audible again, the judge immediately interrupted to inform the witness that a portion of his testimony was missed:

THE COURT: [C]an I stop you for a second?

THE WITNESS: Yeah, please ask me any questions you would like.

THE COURT: Well, the one question I was going to wait till the end. Is that David Bowie behind you?

THE WITNESS: That may never be the end if you don't stop me, so I'm thankful that you did.

THE COURT: All right. There was an issue on our end as far as seeing you and hearing you that came up about two, two-and-a-half minutes ago, so I hate to tell you, we missed a chunk of what you had to say. The [l]ast thing I really recall is that people were attracted to what Mr. Weddle had to offer and were seeking advice from him. You started to talk about the fact that you were based in Florida and then we missed everything after that, so I apologize, but if you can kind of remember where you were at.

{¶35} Notably, the trial court correctly identified the exact sentence where the witness's testimony had been cut off, evidencing that the judge was attentive. The David Bowie poster did not derail the sentencing hearing in any way. The witness did not even respond to that question, and instead, resumed his testimony exactly where he had left off. Weddle was not denied the right to present his mitigation.

{¶36} Accordingly, Weddle's third assignment of error is without merit.

**Conclusion**

{¶37} For the reasons set forth above, the judgment of the Lake County Court of Common Pleas is affirmed.

JOHN J. EKLUND, J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2025-L-085

For the reasons stated in the opinion of this court, appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against appellant.

JUDGE ROBERT J. PATTON

JUDGE JOHN J. EKLUND,
concurs

JUDGE EUGENE A. LUCCI,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-L-085